UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KARL HARRIS,

      Petitioner,

                                            CASE NO. 03-CV-74822-DT

v.                                        HONORABLE BERNARD A. FRIEDMAN

BLAINE LAFLER,

      Respondent.

_____/

**<u>OPINION AND ORDER GRANTING IN PART AND</u>**
**<u>DENYING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS</u>**

      Karl Harris ("Petitioner"), a state prisoner currently confined at the Saginaw Correctional

Facility in Freeland, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  Petitioner

was convicted of two counts of second-degree murder, five counts of assault with intent to

murder, and possession of a firearm during the commission of a felony following a jury trial in

the Wayne County Circuit Court in 1998.  He was sentenced to concurrent terms of 50 to 75

years imprisonment on the murder convictions, concurrent terms of 10 to 15 years imprisonment

on the assault convictions, and a consecutive term of two years imprisonment on the felony

firearm conviction.

      In his pleadings, Petitioner raises claims alleging the presentation of false testimony

and/or the failure to disclose impeachment evidence, a violation of the right of confrontation,

insufficient evidence of identification, prosecutorial misconduct, improper jury instructions,

improper use of a transcript, jury intimidation, judicial error regarding the reading of testimony, ineffective assistance of trial counsel, and cumulative error. For the reasons set forth below, the Court grants in part and denies in part the petition for writ of habeas corpus.

## I.    Facts

Petitioner's convictions stem from the shooting deaths of Jerome Hill and Duan Thomas and assaults upon Erwin Smith, Acturo Scott, Eric Campbell, Richard Sanders, and Jason Dean on the I-96 freeway in Detroit, Michigan on March 8, 1997.

The testimony at trial revealed that Petitioner and some friends got into a fistfight with the victims at Maxey's Nightclub that evening and Maxey's security officers used pepper spray to disperse the crowd. The victims testified that a car pulled along side of their green Ford Expedition as they traveled east on I-96 over the Southfield Freeway and that numerous shots were fired from the car into their vehicle, killing Hill and Thomas and wounding some of the others. The five surviving victims testified that they saw a red light beam coming from the car as multiple shots were fired. Two of those victims described the car as a Chrysler Cirrus or Dodge Stratus and one thought it was a burgundy-colored four-door car. None of the victims could identify the occupants of the car.

Eight casings were recovered from the area of the shooting. All of those casings came from the same gun.

The prosecution presented the preliminary examination testimony of witness Richard Ward who invoked his Fifth Amendment privilege against self-incrimination and refused to testify at trial. The transcript was read into the record. In that testimony, Ward testified that he drove a Stratus owned by girlfriend Sandra Brock's grandmother to Maxey's on the night of the

2

shooting.  He was accompanied by Petitioner and a man named "Bird."  Ward is paralyzed from the waist down but is able to drive with the use of a plunger.  A fight broke out at the club and security officers pushed his wheelchair outside.  Ward saw Petitioner running from the club toward Telegraph Road.  Ward got into his car with a man named "Peewee" and drove to his apartment on Plymouth and Hubbell.  Petitioner was already there when he arrived.  Ward stated that he saw Petitioner exit the apartment building with an AK-47 rifle.  Ward drove to find the victims on I-96 and pulled next to their Expedition.  Petitioner fired 10 to 15 shots at the vehicle, but Ward did not see a red beam of light.  Ward then returned to the apartment building where Petitioner exited the vehicle with the gun.  Ward stayed at his apartment until he left to pick up his girlfriend from work.  Ward admitted that he made two statements to police after his arrest. In the first, he claimed that he was only a passenger in the Stratus.  In the second, he admitted that he was the driver.  Both of the statements identified Petitioner as the shooter.  Ward denied that he had been promised anything in exchange for his testimony.

Sandra Brock, Ward's girlfriend, testified that she and Ward regularly drove her grandmother's Stratus.  On March 8, 1997 at 4:45 p.m., Ward dropped her off at work and left in the Stratus.  He picked her up the next morning around 5:00 a.m. and they went to their apartment.  She saw no weapons in the car.  She was with Petitioner and Ward when they were arrested on April 15, 1997.

Petitioner did not testify at trial.  Ena Baggett, Petitioner's girlfriend, testified on his behalf.  She stated that she was at Maxey's on March 8, 1997 and that she went to an apartment building at Plymouth and Hubbell following the fight.  She thought that Ward and Brock lived there but did not see them that evening.  Shortly after she arrived, Petitioner and a man named

3

"Poo" arrived.  Petitioner was gagging and had a runny nose and watery eyes.  After a few

minutes, Baggett left to take a friend home.  When she returned about five minutes later,

Petitioner was still there and they drove to his mother's house together.

At the close of trial, the jury convicted Petitioner of two counts of first-degree murder,

five counts of assault with intent to commit murder, and felony firearm.  The trial court

subsequently sentenced him to concurrent terms of 50 to 75 years imprisonment, concurrent

terms of 10 to 15 years imprisonment, and a consecutive term of two years imprisonment on

those convictions.

Petitioner filed a post-conviction motion for new trial and evidentiary hearing.  The trial

court granted the motion for evidentiary hearing in part and the hearing was held on March 24,

2000.  The record of that hearing reveals that Ward, Brock, and Petitioner were arrested on April

15, 1997 and held at the 9th Precinct of the Detroit Police Department for several days.  Ward

stated that on April 18, 1997 Detroit Police Sergeant Woodford told him that if he made a

statement, Sandra Brock would be released.  Ward made the first statement, but Brock was not

released.  Detroit Police Sergeant Ike Smith told him that he was not satisfied with the first

statement.  Petitioner then made his second statement and Brock was released.  After Ward's

second statement, a material witness hearing was conducted and Ward was held in custody until

Petitioner's preliminary examination.

At the evidentiary hearing, Ward also testified that a detective told him before the

preliminary examination that if he testified consistently with his second police statement, he

would be released the same day.  The detective told him that if he was asked whether any

promises had been made to him, he should say that no promises had been made.  Ward was

4

released from custody after he testified at the preliminary examination.

Wayne County Circuit Court Judge Vonda Evans testified at the evidentiary hearing. She stated that just prior to the material witness hearing, the prosecutor and Sergeant Smith informed her that a decision had been made that Ward would not be prosecuted and that he was just a witness in the case. Based on this information, Judge Evans did not ask Ward if he desired counsel and did not appoint an attorney for him.

Petitioner's trial counsel, Robert Mitchell, testified at the evidentiary hearing that the prosecutor never advised the defense that Ward would not be prosecuted or that the police had made any promises to Ward while he was in custody. Mitchell was not aware of any immunity agreement granted to Ward.

Cristiana Nance, who represented Ward at Petitioner's trial, testified that she had continually tried to negotiate an immunity deal for Ward with the prosecution, but her efforts were rejected.

At the close of the hearing, the trial court denied the motion for new trial.

## II.   **Procedural History**

Petitioner, through counsel, filed an appeal as of right with the Michigan Court of Appeals essentially raising the same claims presented in the instant petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *See People v. Harris*, No. 212870, 2001 WL 1004367 (Mich. Ct. App. Aug. 31, 2001). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Harris*, 467 Mich. 860, 651 N.W.2d 914 (2002).

Petitioner, through counsel, filed his federal habeas petition on November 26, 2003

asserting the following claims as grounds for relief:

I.     The prosecutor's failure to reveal all promises and/or inducements made to Richard Ward to obtain his statements and/or testimony denied Petitioner due process and a fair trial, the right to present a defense, and the right to confrontation.

II.     Petitioner was denied due process and a fair trial when the prosecutor failed to inform the trial court and the defense about its decision not to prosecute Ward and Ward's preliminary examination transcript was used in lieu of his live testimony at trial.

III.     The prosecutor's decision not to grant formal immunity to Ward and the trial court's failure to order the prosecutor to immunize Ward to compel his live testimony violated Petitioner's right to a fair trial and to confront the evidence.

IV.     Petitioner should be granted a new trial based upon the newly-discovered evidence of promises made to Ward.

V.     The trial court's decision to admit Ward's preliminary examination testimony deprived Petitioner of his right of confrontation and a fair trial.

F.     Where there was no evidence that the person Ward identified in court during the preliminary examination was Petitioner, the prosecution's case was insufficient to go to the jury.

G.     The prosecutor engaged in misconduct and deprived Petitioner of due process and a fair trial by claiming that he represented the decedents' and the victims' families and by commenting on Petitioner's failure to testify.

H.     The trial court's failure to *sua sponte* instruct the jury on lack of presence denied Petitioner a fair trial.

I.     Allowing the jury to have a copy of Ward's preliminary examination testimony was reversible error because the transcript contained damaging and unreliable testimonial evidence against Petitioner.

J.     Prejudice must be presumed and a new trial granted where inadequate steps were taken to prevent the jury from being tainted by threats and intimidating comments made in the presence of two jurors in a court hallway.

K.     Petitioner was denied a fair trial where the trial court improperly led the jury to believe that testimony could not be read back to them under any circumstances.

6

      L.      Petitioner was denied the effective assistance of counsel.

      M.     Petitioner was denied due process and a fair trial by the cumulative effect of the errors at trial.

Respondent filed an answer to the petition on June 14, 2004, asserting that the claims are unexhausted, procedurally defaulted, and/or lack merit.

## III.    <u>Standard of Review</u>

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see*

7

*also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct.  *See*

8

28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.   Analysis

### A.   False Testimony/Failure to Disclose Promises Made to Ward

Petitioner first claims that he is entitled to habeas relief because Richard Ward falsely testified that no promises were made to him in exchange for his testimony and the prosecutor failed to disclose promises that the police made to Richard Ward to induce him to make a police statement and to testify at the preliminary examination.  Respondent contends that this claim lacks merit.

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecution knew they were false. *See Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998) (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).  The burden is on the defendant to show that the testimony was actually perjured.  *Id.*  The knowing use of false or perjured testimony constitutes a denial of due process "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Coe,* 161 F.3d at 343.  This standard is equivalent to the *Chapman v. California*, 386 U.S. 18, 24 (1967), "harmless beyond a reasonable doubt" standard.  *See United States v. Bagley*, 473 U.S. 667, 679, n. 9 (1985).

A prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of

9

the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be favorable and material to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence encompasses both exculpatory and impeachment evidence. *Bagley*, 473 U.S. at 676; *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003). In particular, the duty to disclose favorable evidence includes the duty to disclose impeachment evidence having the potential to undermine the credibility of a significant prosecution witness. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (A "jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.").

Moreover, the prosecution is deemed to have constructive knowledge of favorable evidence "'known only to police investigators and not to the prosecutor.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). *Brady* imposes upon each individual prosecutor a "duty to learn of any favorable evidence known to the others acting on the government's behalf in [the defendant's] case, including the police.'" *Id*. (quoting *Kyles*, 514 U.S. at 437).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. A showing of materiality under *Brady* does not require a demonstration that disclosure of the suppressed evidence would have resulted in the defendant's acquittal. The Supreme Court has explained:

10

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'

*Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S., at 678); *see also Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir. 2003).

Thus, in order to establish a *Brady* claim, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler*, 527 U.S. at 281-82. Once a reviewing court has found a constitutional error under the aforementioned standard, "there is no need for further harmless-error review" because such a determination "necessarily entails the conclusion that the suppression must have had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Kyles*, 514 U.S. at 435 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The Michigan Court of Appeals addressed these issues as claims of prosecutorial misconduct and denied Petitioner relief, stating in relevant part:

> We are not convinced that the alleged police statements revealed at the evidentiary hearing, that Ward's girlfriend would be released from custody once Ward gave a statement and that Ward would be released once he testified consistently with that statement, rise to the level of a promise to induce Ward's testimony implicating defendant. Moreover, although Ward testified at the preliminary examination that he was offered no bargain or promises for his statement and testimony, there is no evidence that the prosecutor knew about the alleged police statements or that it failed to correct testimony that it knew to be false. Also, Ward's counsel testified at the evidentiary hearing that she knew of no plea bargain or offer of immunity by the prosecutor at the preliminary examination or at trial. Thus, we are not persuaded by defendant's claim that

11

*People v Wiese*, 425 Mich 448; 389 NW2d 866 (1986), controls in this case.[2]

* * *

Accordingly, we conclude that the prosecutor's actions in this case did not deny
defendant a fair and impartial trial.

*Harris*, 2001 WL 1004367 at *1 (footnote in original).

Having carefully considered this matter, the Court is convinced that the Michigan Court
of Appeals' decision is contrary to the United States Supreme Court precedent and that it
constitutes an unreasonable application of federal law and the facts.  The Court will explain by
reviewing each *Brady* element as it pertains to this case.

As discussed *supra*, the first element of a *Brady* violation is that the prosecution
suppressed or failed to disclose evidence to a criminal defendant.  In this case, it is undisputed
that the prosecution never disclosed to Petitioner or his defense counsel that police investigators
had made promises to Richard Ward while he was in custody.  Moreover, Respondent does not
challenge the veracity of Ward's post-conviction hearing testimony.  At that hearing, Ward
testified that the police promised to release his girlfriend from custody if he gave a statement
about the shooting, that a detective promised to release him following the preliminary
examination if he testified consistently with his second police statement, and that the same
detective told him to deny that any promises had been made to him.  The prosecution offered no
evidence to rebut Ward's testimony at the evidentiary hearing and the state courts have not
found that testimony to be incredible.  Accordingly, the Court accepts as true Ward's

---

[2]In *Wiese*, the witness was given an undisclosed plea bargain agreement but falsely testified
at the preliminary examination that no such agreement existed.  *Wiese, supra* at 450, 455.  The
Supreme Court found that the prosecution's failure to correct the false testimony "resulted in
considerable prejudice to defendant at trial."  *Id.* at 455-456.

12

evidentiary hearing testimony that the police made such promises to him during the course of Petitioner's criminal proceedings. Further, the record is clear that the prosecution failed to disclose the police promises/statements made to Richard Ward to either Petitioner or his defense counsel. The first element of a *Brady* violation has thus been established.

The Michigan Court of Appeals seemingly did not reach this same conclusion because it determined that "there is no evidence that the prosecutor knew about the alleged police statements or that it failed to correct testimony that it knew to be false." Essentially, the Michigan Court of Appeals found that the prosecution did not have a duty to discover or disclose any promises or comments made to Ward by the police. However, United States Supreme Court precedent is clear that the knowledge of police investigators is imputed to the prosecution when assessing a perceived *Brady* violation. *See Strickler*, 527 U.S. at 280-81; *Kyles*, 514 U.S. at 437.[1] The Michigan Court of Appeals' decision is thus contrary to the Supreme Court's decisions in *Strickler* and *Kyles* with regard to this issue.

---

[1]The law is less clear on whether police knowledge may be imputed to the prosecution in the context of a false or perjured testimony claim. The Supreme Court has not definitively addressed this issue, *See Kyles*, 514 U.S. 433 n. 7; *Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983), and the federal appellate courts have split on this issue. *See, e.g., Mastracchio v. Vose*, 274 F.3d 590, 599 (1st Cir. 2001) ("knowledge of information beneficial to the defendant should be imputed to the prosecutor whenever such knowledge is possessed by a representative of the prosecution"); *Boyd v. French*, 147 F.3d 319, 329 (4th Cir. 1998) (knowing false or misleading testimony by police officer is imputed to the prosecutor); *cf. Smith v. Secretary of New Mexico Dep't. of Corr.*, 50 F.3d 801, 831 (10th Cir. 1995) (holding that *Napue* was not violated where state investigators knew of false testimony but the prosecutor did not have actual knowledge); *Koch v. Puckett*, 907 F.2d 524, 530-31 (5th Cir. 1990). In this case, there is no evidence that the prosecutor knew about any police promises to Richard Ward. Accordingly, to the extent that the Michigan Court of Appeals denied relief on Petitioner's claim that the prosecution knowingly presented false testimony, this Court cannot conclude that the decision was contrary to clearly-established Supreme Court precedent or that it constitutes an unreasonable application thereof. *See Smith v. Massey*, 235 F.3d 1259, 1272 (10th Cir. 2000), *abrogated on other grounds*, *Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). The Court thus confines its grant of habeas relief to the *Brady* claim.

The next issue to be determined under *Brady* is whether the police promises and statements to Ward constitute favorable evidence which should have been disclosed to Petitioner and defense counsel. It is well-settled that the duty to disclose favorable evidence extends to impeachment evidence. *See Bagley*, 473 U.S. at 676; *Giglio*, 405 U.S. at 154-55. The promises and statements made to Ward, the main prosecution witness against Petitioner, certainly qualify as favorable impeachment evidence. *See, e.g., Napue*, 360 U.S. at 269.

The Michigan Court of Appeals seems to negate the significance of the police promises/statements by finding that they did not "rise to the level of a promise to induce Ward's testimony implicating defendant" and by noting that there is no evidence that Ward was given a plea bargain or offer of immunity. Surely, however, police promises to release Ward and his girlfriend may have induced Ward to make a police statement implicating Petitioner and to testify consistently with that statement at Petitioner's preliminary examination. The fact that a plea bargain or immunity deal was not offered does not discount the impeachment value of what was offered. At a minimum, the promises to Ward provided him with an incentive to cooperate with the police (to his own benefit and to Petitioner's detriment), and thereby constituted favorable impeachment evidence. The second element of a *Brady* violation has thus been established. To the extent that the Michigan Court of Appeals' reached a contrary conclusion, its decision is an unreasonable application of *Brady* and its progeny, as well as the facts.

The third and final *Brady* element to be considered is whether the suppressed and favorable impeachment evidence was material to the question of Petitioner's guilt. As discussed *supra*, "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial,

14

understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. Having reviewed the record, the Court concludes that Petitioner has not received such a verdict. Because Richard Ward was the only witness identifying Petitioner as the shooter or directly linking Petitioner to the crime, Ward's credibility was crucial to the prosecution and to Petitioner's defense. The record of defense counsel's cross-examination of Ward at Petitioner's preliminary examination reflects this fact. The more critical a prosecution witness is, the more prejudicial the withholding of impeachment evidence regarding that witness can be. *See, e.g., Mathis v. Berghuis*, 90 Fed. Appx. 101, 107-08, 2004 WL 187552 (6th Cir. 2004) (finding sufficient prejudice to justify habeas relief where prosecution withheld impeachment evidence of complaining prosecution witness). Without Ward's testimony, the prosecution had no case against Petitioner. Thus, the value of impeaching Ward's credibility for the defense cannot be overstated in this case.

Additionally, Petitioner's counsel did not have other significant material with which to impeach Ward's testimony. While defense counsel challenged Ward's credibility by arguing that Ward was not being charged for his involvement in the crime, counsel could point to no concrete evidence that Ward was promised something or otherwise given consideration in exchange for his cooperation. Insinuating that consideration has been given to a witness in exchange for his testimony is much less effective than demonstrating that the police made actual promises to that witness in order to facilitate his testimony.

Lastly, aside from Ward's testimony, the only evidence implicating Petitioner in the shooting, circumstantially, was evidence of his involvement in the bar fight with the victims and his connection to the car driven by his friend, Richard Ward. None of the victims could identify

15

the occupants of the vehicle used in the shooting and there was no physical evidence linking Petitioner to the shooting. In light of the paucity of direct evidence linking Petitioner to the shooting, the jury may have heavily relied on Ward's preliminary examination testimony in determining Petitioner's guilt. *See Seiber v. Coyle*, 156 F.3d 1232, 1998 WL 465899, *6 (6th Cir. 1998) (unpublished) (noting the significance of a witness's testimony given the lack of direct evidence linking defendant to the crime). Given these circumstances, the Court believes that there is a reasonable probability that, had the impeachment evidence concerning Richard Ward been disclosed to the defense and ultimately to the jury, the result of the proceeding would have been different. Petitioner has thus established the third and final element of a *Brady* violation. The Michigan Court of Appeals' determination that Petitioner was not sufficiently prejudiced by the prosecution's conduct in this case constitutes an unreasonable application of *Brady* and *Kyles*, as well as the facts in light of the record. The Court thus concludes that Petitioner is entitled to federal habeas relief on his *Brady* violation claim.

### B.    Decision Not to Prosecute Ward

Petitioner also claims that he is entitled to habeas relief because the prosecutor failed to disclose that a decision had been made not to prosecute Richard Ward. Respondent contends that this claim lacks merit.

As noted, the prosecution has a duty to disclose evidence that is material and favorable to a criminal defendant. *See Brady*, 373 U.S. at 87. This duty extends to impeachment evidence. *See, e.g.*, *Giglio*, 405 U.S. at 154-55.

The Michigan Court of Appeals did not address this issue separately from the other prosecutorial misconduct issues, but apparently denied the claim because it found that there was

16

no evidence that the prosecution made any offer of immunity or plea bargain to Richard Ward in exchange for his police statement or preliminary examination testimony. *See Harris*, 2001 WL 1004367 at *1.

Having reviewed the matter, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts in light of the evidence. The Michigan Court of Appeals found that the prosecution did not offer Ward an immunity agreement or plea bargain in exchange for his statements and testimony. Whether an immunity agreement or understanding actually existed is a factual determination which is presumed correct on habeas review unless the petitioner can rebut it with clear and convincing evidence. *See Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002). Petitioner has not rebutted the Michigan Court of Appeals' factual finding with clear and convincing evidence. Although the record reveals that the prosecution may have made a decision not to prosecute Ward for his involvement in the shooting, the record is devoid of evidence that the prosecution offered Ward an immunity deal in exchange for his cooperation or that the prosecution communicated any decision not to prosecute to Ward or to his counsel. In fact, Ward's counsel testified that her attempts to secure an immunity agreement for Ward were rebuffed by the prosecution. Petitioner has thus not shown that the prosecution withheld evidence of an immunity agreement, failed to disclose exculpatory impeachment evidence, or otherwise committed a *Brady* violation as to this particular claim. *See Williams v. Coyle*, 260 F.3d 684, 707 (6th Cir. 2001) (no *Brady* violation where petitioner failed to show that an agreement with prosecutors existed). Habeas relief is therefore not warranted on this particular basis.

17

**C.      Failure to Grant Ward Immunity**

Petitioner also claims that he is entitled to habeas relief because the prosecutor and the trial court failed to grant Richard Ward immunity in order to compel his live testimony at trial. Respondent contends that this claim lacks merit.

The Michigan Court of Appeals found this claim to be without merit.  *See Harris*, 2001 WL 1004367 at *1.

Having reviewed the matter, this Court concludes that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.  As a general rule, separation of powers principles prevent a court from either granting immunity to a witness or ordering the prosecution to do so.  *See United States v. Pennell*, 737 F.2d 521, 527 (6ᵗʰ Cir. 1984).  The Michigan courts apply these same principles.  *See People v. Schmidt*, 183 Mich. App. 817, 827-32, 455 N.W.2d 435-36 (1990).  Thus, petitioner can point to no clearly established Supreme Court precedent in support of his claim.  On the contrary, in federal cases the Supreme Court has unequivocally held that "[n]o court has authority to immunize a witness," *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983), and the United States Court of Appeals for the Sixth Circuit has "consistently held that a district court is without authority to either grant immunity to a witness who asserts his Fifth Amendment privilege against self incrimination or to force the government to do so."  *United States v. Talley*, 164 F.3d 989, 997 (6ᵗʰ Cir. 1999).

It is true that some courts have recognized two possible exceptions to this rule in circumstances where the actions of the prosecutor would amount to a violation of the criminal defendant's due process rights to a fair trial.  Even assuming that these exceptions constitute

18

"clearly established federal law" sufficient to support a habeas claim, they are inapplicable here.

As the United States Court of Appeals for the Ninth Circuit has explained, "the prosecutor's refusal to grant use immunity to a defense witness denies the defendant a fair trial only when (1) the witness's testimony would have been relevant, and (2) the prosecution refused to grant the witness use immunity with the deliberate intention of distorting the fact-finding process." *Williams v. Woodford*, 306 F.3d 665, 697-98 (9th Cir. 2002). The misconduct prong can be satisfied in one of two ways, by showing that the prosecution either (a) "intentionally caused a defense witness to invoke the privilege against self-incrimination," or (b) "granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness." *Id*. at 698; *see also United States v. Emuegbunam*, 268 F.3d 377, 401 & n.5 (6th Cir. 2001).

Petitioner cannot show prosecutorial misconduct under either standard. Petitioner has failed to establish that the prosecution intentionally caused Ward to invoke his privilege against self-incrimination or that the prosecution granted immunity to other witnesses and not to Ward in order to deliberately distort the fact-finding process. Petitioner is not entitled to habeas relief on this claim.

### D.    Newly-Discovered Evidence Claim

Petitioner further asserts that he is entitled to habeas relief because the information about police promises to Richard Ward is newly-discovered evidence. Respondent contends that this claim lacks merit.

The Michigan Court of Appeals addressed this claim as a matter of state law and

concluded that impeachment evidence was not "newly discovered evidence" which would warrant a new trial. *See Harris*, 2001 WL 1004367 at \*2. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).[2] The post-trial recantation of witness testimony does not warrant habeas relief because such evidence goes to the merits of the conviction, not its legality. *See Hence v. Smith*, 37 F. Supp. 2d 970, 980 (E.D. Mich. 1999) (citing cases). Similarly, a claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *See Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).

Furthermore, federal courts which have suggested that habeas relief may be granted based upon newly-discovered evidence have set an extraordinary showing of innocence before habeas relief can be granted. *See Monroe*, 197 F. Supp. 2d at 763-64 (citing *White v. Keane*, 51 F. Supp. 2d 495, 502-03 (S.D.N.Y. 1999), where court stated that newly-discovered evidence must be "so compelling" that it would violate fundamental fairness not to grant a new trial, and *Alleyn v. Warden*, 878 F. Supp. 30, 31 (M.D. Pa. 1995), where court required a "truly persuasive demonstration of innocence"). Even on direct appeal, motions for new trial based

---

[2]Petitioner's related claims that the prosecutor elicited false testimony and/or withheld impeachment evidence are addressed *infra*.

upon newly-discovered evidence "are disfavored and should be granted with caution." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000).  When a defendant makes a motion for a new trial based upon newly discovered evidence, a defendant must show:

> 1. the evidence was discovered after trial;
> 2. the evidence could not have been discovered earlier with due diligence;
> 3. the evidence is material and not merely cumulative or impeaching; and
> 4. the evidence would likely produce an acquittal if the case were retried.

*Id.* at 586-87.

In this case, the newly-discovered evidence of promises made to Richard Ward by the police, even if true, provides mere impeachment evidence and does not demonstrate Petitioner's actual innocence.  Habeas relief is not warranted on this claim.

### E.      Admission of Ward's Preliminary Examination Testimony

Petitioner next claims that he is entitled to habeas relief because the admission of Richard Ward's preliminary examination testimony violated his right of confrontation. Respondent contends that this claim is without merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate due process and warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."  U.S. Const. amend. VI.  The Sixth Amendment protections are not so broad,

21

however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). At the time of Petitioner's state proceedings, the United States Supreme Court case of *Ohio v. Roberts* provided that hearsay can be admitted into evidence without violating the Confrontation Clause when the statement: (1) falls within a firmly-rooted exception to the hearsay rule, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *See Ohio v. Roberts*, 448 U.S. 56, 66 (1980); *see also Lilly v. Virginia*, 527 U.S. 116, 124 (1999); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000).[3]

In this case, the Michigan Court of Appeals concluded that Ward's preliminary examination testimony was properly admitted at trial because Ward was declared unavailable and Petitioner had a similar motive and opportunity to cross-examine him during the prior proceeding. The court further determined that preliminary examination testimony is a firmly-rooted exception to the hearsay rule under Michigan Rule of Evidence 804(b)(1) such that its admission did not violate the Confrontation Clause. *See Harris*, 2001 WL 1004367 at *2.

Having considered this matter, the Court finds that the Michigan Court of Appeals'

---

[3]On March 8, 2004, the United States Supreme Court overruled *Ohio v. Roberts* and held that out-of-court statements which are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, _ U.S. _, 124 S. Ct. 1354, 1365-74 (2004). At the time of Petitioner's direct appeal, however, *Ohio v. Roberts* was controlling. Accordingly, the Court must consider this issue in light of that decision. *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *Mitzel v. Tate*, 267 F.3d 524, 530-31 (6th Cir. 2001); *see also Murillo v. Frank*, 316 F. Supp. 2d 744 (E.D. Wis. April 5, 2004) (ruling that *Crawford* is a new rule of law which cannot be retroactively applied in a habeas proceeding to determine whether a state court decision is contrary to federal law, and instead considering case under *Roberts* framework).

decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. Richard Ward was unavailable due to the invocation of his Fifth Amendment rights and his preliminary examination testimony was properly admitted at trial pursuant to *Ohio v. Roberts* as a firmly-rooted exception to the hearsay rule.[4] Petitioner has thus failed to demonstrate a Confrontation Clause violation and is not entitled to relief on this claim.

> **F.      Identification Claim**

Petitioner next asserts that he is entitled to habeas relief because there was no evidence that the person Richard Ward identified as Karl Harris at the preliminary examination was Petitioner. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Identification of the defendant as the perpetrator of the offense is an essential element of every crime. *See, e.g., People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976).

The Michigan Court of Appeals acknowledged that the only identification of Petitioner as the shooter was the preliminary examination transcript indicating that Richard Ward pointed to the person in the courtroom he knew as Karl Harris, but nonetheless rejected this claim because it found that the jury could reasonably infer that the "Karl Harris" identified by name at

---

[4]The preliminary examination testimony would also be admissible under *Crawford* given that Ward was unavailable and Petitioner had a prior opportunity to cross-examine him.

23

the preliminary examination was the same "Karl Harris" at trial. *See Harris*, 2001 WL 1004367 at *2. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Michigan Court of Appeals reasonably determined that the jury could rationally infer that Petitioner was the same Karl Harris identified at the preliminary examination. The Court also notes that Petitioner has presented no evidence to the contrary. Habeas relief is thus not warranted on this claim.

### G.   Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by claiming to represent the victims' families and by commenting on Petitioner's failure to testify. Respondent contends that this claim is barred by procedural default and otherwise lacks merit.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85.

In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state

24

procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing Petitioner's claim, the court relied upon a state procedural bar -- Petitioner's failure to timely object to the prosecutor's conduct at trial. *See Harris*, 2001 WL 1004367 at \*2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See, e.g., People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied this claim based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). In this

25

case, Petitioner alleges ineffective assistance of counsel as cause to excuse his default. Even assuming that Petitioner could establish that counsel erred, however, he cannot establish that he was prejudiced as this claim lacks merit.

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The reviewing court's focus is on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*, 4 F.3d at 1355).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as

26

probably to prejudice the defendant.'"  *Pritchett*, 117 F.3d at 964 (citations omitted).

The Michigan Court of Appeals in this case concluded that the prosecutor did not make an improper appeal to jury sympathy by stating that he was representing the People of the State of Michigan and the victims and did not improperly comment on Petitioner's decision not to testify.  This Court agrees and finds that this decision is consistent with Supreme Court precedent and constitutes a reasonable application thereof.  The prosecutor accurately stated his role in representing the State of Michigan.  Any references to the victims, even if erroneous, was not so flagrant as to warrant habeas relief.  Such comments were not misleading as to any material fact and were relatively isolated in nature.  Additionally, the prosecutor's remark during rebuttal that "everyone else has stayed silent" did not directly comment on Petitioner's failure to testify, was isolated in nature, and was made in response to defense arguments that the prosecution should have been produced more witnesses in support of its case.  Under the circumstances, the prosecutor's conduct was not so egregious or flagrant as to deprive Petitioner of a fair trial.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at

27

324.  Petitioner has made no such showing.  This claim is thus barred by procedural default,
otherwise lacks merit, and does not warrant habeas relief.

### H.     Jury Instruction Claim

Petitioner also claims that he is entitled to habeas relief because the trial court failed to
instruct the jury on lack of presence.  Respondent alleges that this claim lacks merit.

The Michigan Court of Appeals rendered the last reasoned opinion discussing the jury
instructions and relied upon Petitioner's failure to object to the instructions at trial in dismissing
his claim.  *See Harris*, 2001 WL 1004367 at *3.  As noted, habeas relief may be precluded on
claims that a petitioner has not presented to the state courts in accordance with the state's
procedural rules.  *See Wainwright*, 433 U.S. at 85.  The failure to make a contemporaneous
objection is a recognized and firmly-established independent and adequate state law ground for
refusing to review trial errors.  *See Coleman*, 501 U.S. at 750-51.  Moreover, the state court
sufficiently relied upon the default despite reviewing the claim for plain error.  *See Hinkle*, 271
F.3d at 244.

A state prisoner who fails to comply with a state's procedural rules waives the right to
federal habeas review absent a showing of cause for noncompliance and actual prejudice
resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of
justice.  *Coleman*, 501 U.S. at 753.  Petitioner alleges that trial counsel was ineffective as cause
to excuse his default.  Petitioner, however, cannot establish that counsel erred or that he was
prejudiced because his jury instruction claim lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a
petitioner must show more than that the instructions are undesirable, erroneous or universally

28

condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it runs afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72. State law instructional errors rarely form the basis for federal habeas corpus relief. *Id*. at 71-72.

The failure to give a defense instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). A failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

In this case, the Michigan Court of Appeals determined that Petitioner was not prejudiced by the trial court's failure to *sua sponte* instruct the jury on lack of presence because Petitioner's "alibi witness" could not account for his presence for the entire evening and the jurors were instructed not to convict Petitioner unless they found that he had committed the shooting. *See Harris*, 2001 WL 1004367 at *3.

This Court agrees and finds that the Michigan Court of Appeals' decision is consistent with Supreme Court precedent and constitutes a reasonable application thereof. The jury instructions as a whole were adequate to protect Petitioner's rights. The jury was properly

29

instructed that Petitioner could be found guilty only if the jurors found that he committed the crimes charged. The jury was also well aware of Petitioner's alibi defense. The jury could not have accepted Petitioner's claim without acquitting him under the instructions given by the trial court, and this Court must presume that the jury followed the court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also United States v. Olano*, 507 U.S. 725, 740 (1993). Where, as here, the instructions as a whole adequately convey the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction. *See, e.g.*, *Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990). Petitioner has not established that the jury instructions, read as a whole, rendered his trial fundamentally unfair.

Lastly, the petitioner has not established that a fundamental miscarriage of justice has occurred. *See Schlup*, 513 U.S. at 324-27; *see also Bousley*, 523 U.S. at 624. His jury instruction claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

## I.       Transcript Claim

Petitioner next alleges that he is entitled to habeas relief because the trial court erred in providing the jury with a copy of Richard Ward's preliminary examination testimony. Respondent contends that this claim lacks merit and has been waived by the failure to cite controlling authority.

Petitioner cites to no United States Supreme Court authority in support of this claim. Nonetheless, it is well-settled that the Sixth Amendment right to a jury trial guarantees a criminal defendant a fair trial by a panel of impartial jurors. *See Smith v. Phillips*, 455 U.S.

30

209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.").  A jury may be tainted when exposed to extrinsic or extraneous influences such as materials which have not been admitted into evidence.  *See, e.g., United States v. Vig*, 167 F.3d 443, 450 (8th Cir. 1999).  Additionally, a criminal defendant's Sixth Amendment rights may be implicated when the jury considers incriminating evidence which was not admitted at trial because the defendant is unable to challenge that evidence.  *See Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2nd Cir. 1994).

The Michigan Court of Appeals considered this claim and concluded that any error in providing the jurors with the transcript of Ward's preliminary examination testimony was harmless because the transcript contained the same testimony that had been read into the record. *See Harris*, 2001 WL 1004367 at *3.

This Court agrees and concludes that Petitioner has failed to establish that the Michigan Court of Appeals' decision is contrary to Supreme Court precedent or that it constitutes an unreasonable application of federal law.  Even if providing the jury with the transcript constituted error, Petitioner is not entitled to relief.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).  Claims concerning the effect of extraneous influences upon the jury during deliberations are subject to harmless error

31

analysis, *see Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003), as are confrontation errors.

*See Delaware v. VanArsdall*, 475 U.S. 673, 684 (1986).  As noted by the state court, the

transcript contained the same testimony which was read into the record in the jury's presence.

Petitioner has not shown that the alleged error substantially affected or influenced the jury's

verdict.  Habeas relief is not warranted on this claim.

>    **J.    Jury Taint Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court failed to

prevent the jury from being tainted when two jurors were subject to intimidating remarks in the

courthouse.  Respondent contends that this claim lacks merit.

As noted, the Sixth Amendment right to a jury trial guarantees a criminal defendant a

fair trial by a panel of impartial jurors.  *Smith*, 455 U.S. at 217); *see also DeLisle v. Rivers*, 161

F.3d 370, 382 (6th Cir. 1998) (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).  Reviewing

courts have recognized that the trial court is in the best position to determine the nature and

extent of alleged jury misconduct, as well as the appropriate remedy for any demonstrated

misconduct.  *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998) (citing

*United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)); *United States v. Tines*, 70 F.3d

391, 398 (6th Cir. 1995).  A state court's factual findings concerning jury impartiality are

presumed correct and may only be overcome by clear and convincing evidence.  *See* 28 U.S.C.

§ 2254(e)(1); *DeLisle*, 161 F.3d at 382 ("we may only overturn a state court's findings of juror

impartiality if those findings were manifestly erroneous").

The Michigan Court of Appeals rejected this claim because the record indicated that the

trial judge detained the people responsible for the threatening behavior, the parties agreed that

the two jurors would not deliberate, and the trial judge instructed all of the jurors not to discuss the case and dismissed the two jurors before deliberations began.  *See Harris*, 2001 WL 1004367 at *3.

Petitioner has not shown that this decision is contrary to United States Supreme Court precedent or that it constitutes an unreasonable application thereof.  Petitioner has not demonstrated that the trial court's response to this situation was inappropriate or inadequate. Further, he has provided no evidence to support his allegations of jury bias or taint.  Petitioner has not shown that the jurors on his case were unable to render a fair and impartial verdict. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998).  Petitioner is thus not entitled to relief on this claim.

### K.      Judicial Error Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court improperly led the jury to believe that testimony could not be read back to them.  During the deliberations, the jurors asked for a copy of the testimony of Aaron Guy and the pathologist. The trial court responded that transcripts were not available and that it would take a long time to obtain them.  The court advised the jury to remember the testimony collectively.  Petitioner claims that his due process rights were violated because the trial court discouraged the jury from having testimony read back to them.  Respondent contends that this claim lacks merit and has been waived by the failure to cite controlling Supreme Court authority.

The Michigan Court of Appeals rendered the last reasoned opinion discussing this claim and relied upon Petitioner's failure to preserve this issue at trial in dismissing his claim.  *See*

33

*Harris*, 2001 WL 1004367 at \*3.  As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, 433 U.S. at 85.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See Coleman*, 501 U.S. at 750-51.  Moreover, the state court sufficiently relied upon the default despite reviewing the claim for plain error.  *See Hinkle*, 271 F.3d at 244.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 753.  Petitioner alleges that trial counsel was ineffective as cause to excuse his default.  Petitioner, however, cannot establish that counsel erred or that he was prejudiced because this claim lacks merit.

Petitioner relies upon state law in making this claim and fails to cite to any Supreme Court authority in support of this claim.  It is well-settled that habeas relief may not be granted on the basis of a state law error.  *See, e.g., Estelle*, 502 U.S. at 67-68.  In any event, the United States Court of Appeals for the Sixth Circuit has held that the decision to re-read testimony to the jury in a federal criminal proceeding is within the trial court's discretion and is reviewable only for an abuse of discretion.  *See United States v. Thomas*, 875 F.2d 559, 562 (6th Cir. 1989). The trial court did not abuse its discretion when it informed the jury that transcripts were not available and encouraged them to recall the testimony collectively.  Contrary to Petitioner's assertion, the trial court did not foreclose the possibility of having testimony read back, it just did not offer to do so.  Further, Petitioner has not shown how he was prejudiced by the trial

34

court's actions.  This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

### L.        Ineffective Assistance of Counsel Claim

Petitioner also alleges that he is entitled to habeas relief because trial counsel was ineffective.  Specifically, Petitioner contends that counsel was constitutionally deficient for failing to:  (a) advise the court at the preliminary examination that Richard Ward had a self-incrimination problem, (b) request that Ward be granted immunity, (c) argue that objections at the preliminary examination precluded Petitioner from effectively cross-examining Ward, (d) argue that Ward waived his Fifth Amendment privilege, (e) argue that Ward should have been held in contempt longer, (f) object to prosecutorial misconduct, (g) request a jury instruction on lack of presence, (h) object to the jury being given a copy of Ward's preliminary examination testimony, (i) challenge or exclude juror No. 14, (j) seek immediate removal or admonishment of the two jurors who were subject to improper comments, (k) request that the trial court inform the jury that testimony could be read back to them, and (l) investigate and present defense witnesses.  Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

35

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The Michigan Court of Appeals denied Petitioner relief on his ineffective assistance of counsel claim, stating:

> In a claim of ineffective assistance of counsel, the burden is on defendant to show that counsel made serious errors that prejudiced the defense and deprived defendant of a fair trial.  *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997).  There is a strong presumption that counsel's conduct was reasonable.  *Id*. Further, this Court will not assess counsel's competence with the benefit of hindsight.  *People v Rice* (On Remand), 235 Mich App 429, 445; 597 NW2d 843 (1999).  Here, most of defendant's claims of ineffective assistance involve issues previously considered and found not to be error.  Moreover, each of the claims of error raised by defendant involves questions of trial strategy, on which competent counsel could differ, particularly in hindsight.  This Court will not substitute its judgment for that of trial counsel in matters of trial strategy. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).  Remand for an

36

evidentiary hearing is not necessary and defendant has not established ineffective assistance of counsel.

*Harris*, 2001 WL 1004367 at *4.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. Petitioner has not rebutted the presumption that trial counsel's conduct throughout the proceedings constituted sound trial strategy. *See, e.g., Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (decisions as to what evidence to present and whether to call certain witnesses are matters of trial strategy). Further, as to counsel's actions concerning matters previously addressed and deemed without merit in this opinion, Petitioner has failed to established that he was prejudiced by counsel's conduct. Petitioner has thus failed to satisfy the requirements of *Strickland* and is not entitled to habeas relief on his ineffective assistance of counsel claim.

### M.   Cumulative Error Claim

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. Respondent contends that this claim lacks merit. The Michigan Court of Appeals rejected this claim because Petitioner had not established entitlement to relief on any of the alleged errors. *See Harris*, 2001 WL 1004367 at *4.

Given this Court's determination that Petitioner's first habeas claim is meritorious, it need not address this claim as a distinct basis for relief. The Court notes, however, that the United States Court of Appeals for the Sixth Circuit has stated that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is thus generally not available on a claim of cumulative error.

### V.   <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is entitled to federal habeas relief on the first claim contained in his petition concerning the prosecution's presentation of false testimony and failure to disclose exculpatory impeachment evidence, but is not entitled to habeas relief on the remaining claims contained in his petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **CONDITIONALLY GRANTED**.  The State must retry Petitioner or release him from custody within 120 days of the date of this order.  If the State fails to take such action, this Court shall consider the issuance of an additional writ unconditionally releasing Petitioner from state custody.  Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.


_____s/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE

DATED: ___July 14, 2005_____

38